Exhibit
A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-mc-23973

RE:    **SCOTT T. KALISCH**
        **Florida Bar #367877**

_____/

## FINAL REPORT AND RECOMMENDATION

## THE AD HOC COMMITTEE ON ATTORNEY ADMISSIONS, PEER REVIEW, AND ATTORNEY GRIEVANCE FOR THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA

The above matter is before the Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance for the United States District Court, Southern District of Florida (the "Committee").

## FACTUAL AND PROCEDURAL BACKGROUND

Scott T. Kalisch was referred to the Committee for a review of his actions and omissions as counsel for Reynaldo Crespo Marquez in *United States v. Marquez*, No. 21-cr-20050. Mr. Kalisch, admitted to the Florida Bar in 1983, is a sole practitioner who primarily (if not entirely) handles criminal matters.

This matter stems from a Protective Order entered by United States Magistrate Judge McAliley on October 8, 2020. (*See Marquez*, Protective Order, [ECF No. 15] entered on Oct. 8, 2020 (S.D. Fla. 2020)).[1] Magistrate Judge Chris McAliley entered the Protective Order upon a finding of good cause and upon motion by the Government. (*See id.* 1). Specifically, the Government requested that the Court regulate discovery "to ensure and protect the identity and

---

[1] Unless otherwise noted, all record citations to *Marquez* refer to *United States v. Marquez*, No. 21-cr-20050. Citations to "Kalisch Tr." refer to Mr. Kalisch's testimony before the Committee on October 26, 2022. Citations to "Kalisch Suppl. Tr." refer to his testimony before the Committee on January 23, 2023.

security of the victims, and to avoid the disclosure of this information to other individuals[.]" (Gov't's Unopposed Mot. for Protective Order, [ECF No. 14] filed on Oct. 7, 2020 (S.D. Fla. 2020)).

Mr. Kalisch entered appearances for Defendant, Reynaldo Marquez on September 23 and 30, 2020—the dates of which predate both the Government's unopposed motion for protective order and the Court's Protective Order. (*See* Notice[s] of Appearance, [ECF Nos. 8, 13] filed on Sept. 23 & 30, 2020 (S.D. Fla. 2020)). His client, Reynaldo Marquez, was charged with crimes relating to his participation in an international human smuggling operation. (*See generally* Criminal Compl., [ECF No. 3] filed on Aug. 10, 2020 (S.D. Fla. 2020)). The Criminal Complaint, unsealed on September 9, 2020, describes, in detail, the (alleged) acts and conduct of Mr. Marquez and his co-conspirators. (*See generally id.*). By way of example, it alleges Mr. Marquez (1) "direct[ed]" co-conspirators to "beat . . . victims and place extortion calls to several of the victim's relatives"; (2) "appeared to be in charge" of the smuggling operation, given his "instruct[ions] [to] the other kidnappers"; and (3) "repeatedly punched [a victim] in the face" and "shocked him with a stun gun[.]" (*Id.* ¶¶ 7, 19, 39 (capitalizations omitted)).

The Government cited to the Criminal Complaint in its unopposed application for a protective order.[2] (Gov't's Unopposed Mot. for Protective Order 1–2). The Court entered its Protective Order, thereafter. It reads, in pertinent part:

> **IT IS HEREBY ORDERED** that the government's Motion for Protective Order Regulating Disclosure of Discovery Information is **GRANTED**;

---

[2] Mr. Kalisch testified he did not recall agreeing to the Protective Order. (*Compare* Kalisch Tr. 39:14-17 ("No, I don't. I don't think we just -- we submitted to the order without agreeing to it."), *with* Gov't's Unopposed Mot. for Protective Order 1 ("The United States certifies that the parties have discussed this matter in good faith as required by the Local Rules. The defendant does not oppose this motion.")). Mr. Kalisch, however, admitted that even though he did not remember receiving a call from the U.S. Attorney's Office, he would not have had an issue with the entry of the protective order. (Kalisch Tr. 40:15-25).

**IT IS FURTHER ORDERED** that the government is authorized to disclose the Discovery in its possession, which the government believes is necessary to comply with the discovery obligations imposed by this Court;

**IT IS FURTHER ORDERED** that counsel of record for the defendant shall hold the Discovery produced pursuant to this Order in strict confidence. Therefore, defense counsel shall restrict access to the Discovery, and shall disclose the Discovery to his or her client, office staff, investigators, and to anticipated fact or expert witnesses only to the extent that defense counsel believes is necessary to assist in the defense of his client in this matter;

**IT IS FURTHER ORDERED** that counsel of record for the defendant shall advise any person to whom the Discovery is disclosed that such information should be held in strict confidence and that further disclosure or dissemination is prohibited without defense counsel's express consent; and

**IT IS FURTHER ORDERED** that counsel of record for the defendant shall obtain a certification from each person to whom the Discovery is disclosed, in which the recipient; (a) acknowledges the restrictions set forth in this Protective Order, and (b) agrees that he/she will not disclose or disseminate the information without the express consent of defense counsel. Counsel shall keep a copy of each certification to identify the individuals who received the Discovery and the date on which such information was first disclosed.

(Protective Order 1-2 (original bold and capitalizations)).

As this case proceeded to a trial posture, the Court issued a February 3, 2022 Order, ordering the Government to furnish defendants, including Mr. Marquez, with "the names, dates-of-birth, and addresses for Aliens 1 through 9 and the victims identified in the Superseding Indictment [ECF No. 37] on or before February 28, 2022." (Feb. 3, 2022 Order [ECF No. 182]). The Government, however, would later move for reconsideration of the Court's February 3, 2022 Order "in light of encountering communications bearing on the identification of witnesses and dissemination of discovery." (Gov't's Mot. for Recons., [ECF No. 245] 1-2, filed on May 5, 2022 (S.D. Fla. 2022)).

The Court issued its ruling on the reconsideration motion shortly thereafter. (*See* June 3, 2022 Order [ECF No. 284]). In doing so, the Court detailed the evidence disclosed by the

Government relating to potential witness tampering and the improper dissemination of protected discovery, writing "the evidence demonstrates [co-conspirator] Gonzalez Vidal induced a violation of the discovery protocol to tamper with witnesses." (*Id.* 4). Relevant here, the Court noted that co-conspirator Gonzalez Vidal "received pictures of protected discovery documents from" Mr. Kalisch in November 2020. (*Id.* 3-4). Gonzalez Vidal's phone records also revealed multiple messages with Mr. Kalisch and detailed attempts, by Gonzalez Vidal, to identify and tamper with witnesses in the underlying case. (*See id.* 3-5). The Court ultimately revised its February 3, 2022 Order and shortened the Government's witness disclosure period "to protect the victims and the integrity of the trial." (*Id.* 5).

Nearly a month later, the Government filed a sealed motion for a *Garcia/McLain* hearing and/or to disqualify counsel. (Govt's Sealed Mot. . . . to Disqualify Defense Counsel, [ECF No. 293] filed on July 1, 2022 (S.D. Fla. 2022)). In that motion, the Government submitted that Mr. Kalisch's "disqualification [was] warranted because [of] his violation of the Court's Protective Order and the evidence gathered from the phone of co-defendant [Gonzalez Vidal] ma[d]e him a fact witness to events pertinent to the trial evidence and raise[d] questions regarding Mr. Kalisch's divided loyalty among charged defendants." (*Id.* 1). The Government continued: "[A]s a witness to acts of potential obstruction of justice, Mr. Kalisch is necessarily an investigation subject." (*Id.* 1). According to the Government, "[t]hese circumstances g[a]ve rise to what [was] a significant conflict." (*Id.*). Four days later, Mr. Kalisch moved, *ore tenus*, to withdraw as counsel for Mr. Marquez, which the Court granted. (*See* Min. Entry, [ECF No. 295] entered on July 5, 2022 (S.D. Fla. 2022)). The granting of the motion necessitated the need to appoint new counsel, postpone trial, and rendered moot the Government's motion to disqualify. (*See* July 5 & 6, 2022 Order[s], [ECF Nos. 296, 297, 298] entered on July 5 & 6, 2022 (S.D. Fla. 2022)).

*Procedural background.* Mr. Kalisch was referred to the Committee for a review of his actions and omissions as counsel for Mr. Marquez. The Committee appointed an investigative sub-committee to conduct a preliminary investigation of the facts stated in the Reconsideration Order. The investigation included a meeting with Mr. Kalisch on August 12, 2022, a review of the underlying criminal case docket in which Mr. Kalisch was counsel of record, a review of the letter of referral, and a review of information provided by Mr. Kalisch, which included an audio message (and translation) between Mr. Kalisch and co-conspirator Gonzalez Vidal. Mr. Kalisch, with counsel, appeared via video conference before the Committee to provide sworn testimony on October 26, 2022.

On November 29, 2022 Mr. Kalisch was served with a copy of the Committee's Proposed Report and Recommendation, as well as a copy of the transcript of his testimony before the Committee on October 26, 2022, and in the forwarding email, Mr. Kalisch was informed of his rights under Rule 6 of The Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys in the Southern District. The Committee's initial Proposed Report and Recommendation recommended that Mr. Kalisch be disbarred from practice in the Southern District. Mr. Kalisch sought an extension of time to December 23, 2022 to respond to the Proposed Report and Recommendation; which request was granted by the Court on December 5, 2022. Mr. Kalisch's response was timely filed on December 23, 2022. On January 10, 2023, the Court entered an order granting the Committee additional time (to March 13, 2023) to submit its Final Report and Recommendation. Thereafter, the Committee decided to have Mr. Kalisch appear a second time for additional questioning. That Committee meeting was held, with Mr. Kalisch, his counsel, and a number of Committee members appearing in person at the Wilkie D. Ferguson, Jr. United States Courthouse, and other Committee members appearing by video-conference on January 23,

2022.

## FINDINGS

After careful consideration of all of the above, the Committee finds, among other things, that Mr. Kalisch's behavior is violative of a court order and implicates a number of the Rules Regulating the Florida Bar, and that Mr. Kalisch provided non-credible and problematic testimony at his initial hearing before the Committee. This Report and Recommendation addresses each point in turn, and addresses Mr. Kalisch's supplemental testimony before the Committee and the impact that testimony had on the Committee's recommendation to the Court.

*First, the Protective Order.* Mr. Kalisch admitted he willfully, knowingly, and intentionally violated the Court's Protective Order's requirement to hold the discovery produced in strict confidence. "It is this Protective Order I have deemed to have violated when I sent four items of discovery to Jose Gonzalez Vidal[.]" (Kalisch Tr. 5:8-11). He testified that "it was [his] decision to send [Gonzalez Vidal] the [discovery] photos." (Kalisch Tr. 44:2-3).

Q: "[D]id photos come into your mind as something that should not have been disclosed under the protective order?"; Mr. Kalisch: "Correct."; Q: "And you did it anyway, correct?"; Mr. Kalisch: "Correct." (Kalisch Tr. 47:18-25).

Q: "[Y]ou understood that you were bound by a protective order in the case, right?"; Mr. Kalisch: "Yes."; Q: "And you still gave [Gonzalez Vidal] the photos at that time?"; Mr. Kalisch: "Yes." (Kalisch Tr. 48:20-25).

Q: "Based on your response right now, your analysis was that you understood the pictures were a violation of the motion for protective order – the protective order?": Mr. Kalisch: "Yes." (Kalisch Tr. 60:25-61:5).

Equally important, Mr. Kalisch also admitted to violating the Protective Order's additional

obligation on defense counsel, by failing to obtain a certification to abide by the Protective Order from each person to whom protected discovery is disclosed. (*See* Kalisch Tr. 11:12-16 (Q: "So after the disclosure, did you obtain any kind of certification from [Gonzalez] Vidal that he was to hold that discovery in strict confidence?"; Mr. Kalisch: "Not certification, no.")).

For his explanation, Mr. Kalisch stated he initially interacted with a co-conspirator in order to obtain favorable evidence to support his client, Mr. Marquez's defenses. (Kalisch Tr. 10:23-11). Confusingly, Mr. Kalisch indicated that after he disclosed the protected discovery,[3] he neither followed up with Gonzalez Vidal regarding the evidence, nor obtained any of the favorable evidence Gonzalez Vidal (allegedly) suggested he would provide to Mr. Kalisch. (*See* Kalisch Tr. 27:21-24 (Q: "[Y]ou never followed up and asked for [the valuable evidence]; is that correct?"; Mr. Kalisch: "Correct.")).

Mr. Kalisch further explained that his decision to disclose protected discovery was "careless[]," "stupid[]," and "never to be redone." (Kalisch Tr. 23:18-19). Still, and even assuming Mr. Kalisch's explanations are credible, it is undisputed, and in fact admitted, that Mr. Kalisch violated the *terms* of the Protective Order, which, again, was in place to ensure and protect the identity and security of the victims, to avoid the disclosure of discovery information, and to preserve the integrity of the trial. While the Committee was not made aware of any actual harm to

---

[3] Mr. Kalisch offered confusing testimony during his second appearance before the Committee, explaining at one point that the purpose of disclosing the discovery was not to obtain favorable information for his client but rather to end his communications with Gonzalez Vidal. In Mr. Kalisch's words: "My purpose at the time was to send [Gonzalez Vidal] something of no value so that he would not call me back. I deliberately limited the value of the items that I sent him in order to say: Enough. Enough." (Kalisch Suppl. Tr. 37:11-15). But later he acknowledged that he was initially trying to obtain information to help his client. "It was only about the boat and how they arrived in Mexico." (Kalisch Suppl. Tr. 68:8-11). But later, Gonzalez Vidal wanted "a birthday cake and I give him a cupcake…." As a result, he felt that he was telling him "you're not getting the birthday cake." (Kalisch Suppl. Tr. 72:15-20).

potential witnesses, the Court interpreted the telephone transcripts submitted by the Government as evidencing Gonzalez Vidal's "willingness to employ underhanded and perhaps even violent methods of dealing with potential witnesses."[4] (*See, e.g.*, June 3, 2022 Order 4-5).

*Second, the Rules Regulating the Florida Bar.*[5] Mr. Kalisch's conduct raises concerns implicating numerous Rules of Professional Conduct.[6]

- Rule 4-1.6, Confidentiality of Information—*compare* Rule 4-1.6 ("A lawyer must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent."), *with* (Kalisch Tr. 63:20-23 (Mr. Kalisch: "I don't think [Mr. Marquez] approved or disapproved of what I was turning over. I made that decision on my own. [Mr. Marquez] didn't participate.")).

- Rule 4-1.7, Conflict of Interest; Current Clients—*compare* Rule 4-1.7 ("[A] lawyer must not represent a client if: (1) the representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a

---

[4] Mr. Kalisch did testify he was unaware of Vidal Gonzalez's intent to tamper with witnesses. "There was no maligning purpose on my part. I didn't want [Gonzalez Vidal] to know the witnesses' identities. I don't think any witnesses have been tampered with at all. I didn't recognize the danger of what I was doing." (Kalisch Tr. 56:1-6).

[5] "The Rules Regulating the Florida Bar govern the professional conduct of attorneys in the Southern District of Florida." *Vital Pharms., Inc. v. Alfieri*, 585 F. Supp. 3d 1347, 1350 (S.D. Fla. 2022) (citing S.D. Fla. L.R. 11.1(C)).

[6] In disciplinary proceedings, the burden of proof for a violation of the Rules Regulating the Florida Bar is clear and convincing evidence. *See In re Decker*, 212 So. 3d 291, 297 (Fla. 2017). The Committee, here, makes no finding that Mr. Kalisch's actions violated these rules by clear and convincing evidence. Still, the Committee notes that Mr. Kalisch's conduct implicated these Rules and put him at risk for a separate determination that he had violated the Rules Regulating the Florida Bar. The Committee discusses these Rules in order to underscore the seriousness of Mr. Kalisch's conduct

former client or a third person or by a personal interest of the lawyer."), *with* (Kalisch Tr. 44:2-3; 47:18-25; 48:20-25; 60:25-61:5 (admitting to a knowing, willful, and intentional violation of the Court's Protective Order by sending protected discovery to a former client, co-conspirator and later co-defendant in underlying criminal case), *and* Kalisch Tr. 12:4-16 (disclosing "four or five" conversations Mr. Kalisch had with Gonzalez, some of which included the improper disclosure of discovery materials)).

- Rule 4-3.4, Fairness to Opposing Party and Counsel—*compare* Rule 4-3.4(c) ("A lawyer must not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"), *with* (Mr. Kalisch's Opening Statement (admitting to a knowing, willful, and intentional violation of the Court's Protective Order (Kalisch Tr. 5:8-11)), *and* Kalisch Tr. 44:2-3; 47:18-25; 48:20-25; 60:25-61:5 (same)).

- Rule 4-3.7, Lawyer as Witness—*compare* Rule 4-3.7(a) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client unless [certain circumstances are met.]"), *with* (Mr. Kalisch's Opening Statement (admitting to a knowing, willful, and intentional violation of the Court's Protective Order (Kalisch Tr. 5:8-11)), Kalisch Tr. 44:2-3; 47:18-25; 48:20-25; 60:25-61:5 (same), *and* July 3, 2022 Order 4-6 (discussing communications between co-defendant and Mr. Kalisch relating to discovery disclosures, which led to efforts by co-defendant to either intimidate, or tamper with, witnesses and victims, and threatened the integrity of the trial in the underlying criminal case)).

- Rule 4-8.4, Misconduct—*compare* Rule 4-8.4 ("A lawyer shall not: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce

9

another to do so, or do so through the acts of another; [or] (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]"), *with* (Mr. Kalisch's Opening Statement, admitting to a knowing, willful, and intentional violation of the Court's Protective Order (Kalisch Tr. 5:8-11)), *and* Kalisch Tr. 44:2-3; 47:18-25; 48:20-25; 60:25-61:5 (same)).

*Third, Mr. Kalisch's initial testimony before the Committee.* As noted, the Court entered the Protective Order to regulate discovery materials and the sensitive information contained therein, including, for example, the identities of victims and/or witnesses. (*See generally* Protective Order; Gov't's Unopposed Mot. for Protective Order). When questioned about the vulnerabilities and violence (allegedly) inflicted upon victims—a reason the Government requested the Court to enter the Protective Order—Mr. Kalisch testified the (alleged) "violence was not known to [him] at the time that [he] disclosed th[e] [protected discovery,]" insisting the "incidents of violence became known to [him] when [he] studied discovery." (Kalisch Tr. 14:7-14). This explanation is at odds with the record in the underlying criminal case. The Criminal Complaint provides ample detail about the violence (allegedly) inflicted upon victims of a human smuggling operation. (*See generally* Criminal Compl.). This Criminal Complaint was unsealed on September 9, 2020—a month *before* the Protective Order was granted—and referenced in the Government's application for a protective order. No reasonable explanation exists for Mr. Kalisch's date disorientation.[7]

Mr. Kalisch also testified to his failure to remedy his discovery violation, as an officer of the Court. As the timeline reflects, Mr. Kalisch disclosed the protected discovery materials in

---

[7] Mr. Kalisch admitted his initial testimony relating to the acts of violence was "not accurate." (Kalisch Suppl. Tr. 18-2). When pressed further, Mr. Kalisch explained he was "aware of the [alleged] acts of violence" but did not see "the impact of the violence" until he "reviewed the discovery." (Kalisch Suppl. Tr. 18:1-11).

November 2020, and was later brought to the Court's attention by the Government's May 2022 request for reconsideration of the Court's February 3, 2022 Order. Mr. Kalisch admitted he made no efforts to remedy the violations of the Court's Protective Order or honor his ethical obligations during that eighteen-month span. (*See* Kalisch Tr. 63:5-13 (Q: "After you turned over the photographs knowing that you had a protective order in place, did you do anything after disclosing the photos to alert your colleagues or the Court about the inadvertent disclosure or trying anything to remedy the violation of that protective order?"; Mr. Kalisch: "No.")).

The facts of this case highlight the importance of attorneys adhering to the orders of the Court; especially protective orders in criminal cases. The problems caused by a knowing violation by counsel can often go undetected, but counsel's silence can often magnify the problems. At the initial Committee hearing, Mr. Kalisch still seemed unclear on what he should have done. On the one hand he testified that he did not believe that the protective order required him to inform the Court that he had violated it (Kalisch Tr. 63:24-64:13); but yet he testified, "I should have said, 'I made a mistake, Mr. AUSA. I disclosed these items.'" (Kalisch Tr. 65:22-66:3). But he added "I didn't think that was part of my responsibility to do that, to tell the prosecutor at that time." (Kalisch Tr. 66:1-3). When asked if the government had never obtained Gonzalez Vidal's phone and his phone calls would he have been caught violating the protective order, Mr. Kalisch testified, "[p]robably not." (Kalisch Tr. 69: 9-13).

*Fourth, Mr. Kalisch's supplemental testimony*. Given the proposed recommendation by the Committee—disbarment in the Southern District of Florida—the Committee afforded Mr. Kalisch a second opportunity to appear, in person, before the Committee to address his prior (and problematic) testimony and to explain why a sanction less severe than disbarment should be imposed. The Committee focused its examination on the points discussed above and was guided

by the following considerations: the egregiousness of the violation at issue, Mr. Kalisch's scienter, the repeated nature of the violations (if any), Mr. Kalisch's admission of wrongdoing, and any mitigating factors that the Committee should consider. The Committee also permitted Mr. Kalisch (and his counsel) to present any other factor (that he believed) the Committee should consider when imposing an appropriate recommendation to the Court. This Report now re-addresses its proposed sanction in light of these considerations, Mr. Kalisch's proposed mitigating factors, and his supplemental testimony before the Committee.

*First, the egregiousness of the violation.* Mr. Kalisch and his counsel agree that Mr. Kalisch's conduct was particularly egregious. Mr. Kalisch, a lawyer with 40 years of experience in criminal matters, disclosed protected discovery to a former client and (alleged) co-conspirator in a case involving allegations of a violent human smuggling operation. (*See, e.g.*, Kalisch Suppl. Tr. 6:19 (characterizing his conduct as "deeply disturbing"); Kalisch Suppl. Tr. 7:21-25 (explaining his violation of the Protective Order "is about as bad as I can get"); Kalisch Suppl. Tr. 112:6-7 (counsel for Mr. Kalisch noting that "[t]his is very serious what happened[;] [t]here is no question")).

*Second, Mr. Kalisch's scienter.* Mr. Kalisch's actions were intentional; there is no question he intended to violate the Protective Order. (*See, e.g.*, Kalisch Suppl. Tr. 7:4-8 (Mr. Kalisch: "[Y]ou have to own it and accept it and embody the fact that you intentionally violated the plain terms of the Court's protective order[.]")). Mr. Kalisch noted, however, that his intention was to "limit[] the items" to (what he considered to be) discovery with "no informational value." (Kalisch Suppl. Tr. 36:16-47:4). The discovery, according to Mr. Kalisch, "couldn't be used to identify any witnesses in the case" and was limited to individuals already known to Gonzalez Vidal. (Kalisch Suppl. Tr. 36:16-47:4). Despite Mr. Kalisch's explanation of his intentions; this factor militates in

favor of a sanction. The undisputed fact remains: Mr. Kalisch intentionally violated the Court's Protective Order, which was in place to protect the victims and the integrity of the trial.

*Third, the repeated nature of Mr. Kalisch's violations (if any).* This factor weighs in Mr. Kalisch's favor. Mr. Kalisch's choice to violate the Court's Protective Order was a singular decision and represents one violation. Although Mr. Kalisch acknowledged a prior misstep with Judge Moreno in 2003, *see United States v. Vallejo-Sanchez*, No. 03-cr-20637-Moreno, Summ. Criminal Contempt of Att'y Scott Kalisch [ECF No. 43], (S.D. Fla. Oct. 21, 2003), and the sanction imposed for that violation, the fact remains that Mr. Kalisch's conduct represents a single decision to violate a Court order, one of which Mr. Kalisch described as out of character in his 40-year career as a criminal defense attorney. (Kalisch Tr. 4:21-22 (Mr. Kalisch: "This is the first time I have had to appear before a disciplinary committee."); Kalisch Suppl. Tr. 96:5-7 (Mr. Kalisch: "The fact that I have been a practicing attorney for 40 years without incident[.]")).

*Fourth, Mr. Kalisch's admission of wrongdoing.* Mr. Kalisch was consistent and sincere on this point; he admits his wrongdoing and was honest about his discovery violation to the Committee. There is nothing in Mr. Kalisch's testimony that suggests to the Committee that he does not understand the seriousness of his actions. Quite the contrary. Mr. Kalisch forthrightly avowed responsibility for his discovery violation. (*See* Kalisch Suppl. Tr. 8:16-24 (Mr. Kalisch: "...I'm deeply humiliated, deeply remorseful. I would like to apologize to [the Court]. I would like to apologize to all of you. I would like to apologize to the members of the Bar whom I have lived and worked with for 40 years, here in Miami for 20 years. I've betrayed them as well, 'cause we live by a standard. The standard is a high standard, because that's what is expected of [Florida bar members].")).

*Fifth, Mr. Kalisch's proposed considerations.* Mr. Kalisch presented additional factors to the Committee that warrant consideration when recommending an appropriate sanction for Mr. Kalisch's conduct. Specifically, Mr. Kalisch is a 78-year-old solo-practitioner who currently represents criminal defendants in Texas and the Middle District of Florida. The law, according to Mr. Kalisch, is all he knows. (*See* Kalisch Suppl. Tr. 49:3-7 (Mr. Kalisch: "I've been doing this for 40 years, and it would be hard for me to think of something else I might be able to do. And that would present a financial strain.")). A disbarment sanction would seriously impact his current practice of law with those clients and present other challenging life circumstances, including the inability to find gainful employment opportunities in the near future. *See* M.D. Fla. L.R. 2.04(b)(1)-(2) (a lawyer is "automatically suspended" twenty-one days after that lawyer "is publicly disciplined by, is disbarred on consent from, or has resigned from, any bar"); N.D. Tex. L.R. 83.8(a) (potentially imposing "loss of membership" and duty to report obligations); (Kalisch Suppl. Tr. 48:10-49:12 (Mr. Kalisch: "Eventually, I would have financial difficulties if I had no way to making a living, I couldn't practice law anywhere because this disbarment would automatically disbar me everywhere under their local rules. . . . And it would present a considerable impact – a negative impact on my life.")).

Mr. Kalisch, whose office is in Tampa, also discussed his continued work on the Criminal Justice Act panel in the Middle District of Florida, highlighting his 40-year experience as a bar member and ability to speak Spanish and represent a diverse set of clients. (*See, e.g.*, Kalisch. Suppl. Tr. 32:17-24 (discussing CJA experience and requesting the Committee "reconsider the disbarment order recommendation, because it [would] eliminate[] 40 years of work that [he has] done"). The Committee finds that these additional factors lean in Mr. Kalisch's favor.

## RECOMMENDATION

Given the record as a whole, the Committee has numerous concerns about Mr. Kalisch's conduct. Mr. Kalisch willfully, knowingly, and intentionally violated the plain terms of the Court's Protective Order in a case involving allegations of a violent human smuggling operation and that was entered to protect the identities of witnesses and victims. Mr. Kalisch knew or should have known that the result of his actions could easily have placed the safety of the witnesses and victims in jeopardy. These admissions and egregious actions fall well below the standard of practice that is mandated for lawyers representing criminal defendants in federal court. In addition, the Committee finds that Mr. Kalisch's conduct in this matter implicates the following Rules of Professional Conduct: Rule 4-1.6, Confidentiality of Information; Rule 4-8.4, Misconduct; Rule 4-3.4, Fairness to Opposing Party and Counsel; Rule 4-3.7, Lawyer as Witness; and Rule 4-1.7, Conflict of Interest; Current Clients.

Notwithstanding these findings, Mr. Kalisch unquestionably deserves recognition for accepting responsibility for his actions, and expressing, what the Committee finds to be credible, remorse for his actions violating the Court's Protective Order. The Committee finds that Mr. Kalisch was remorseful, understood the gravity of his misconduct, and took responsibility for his actions. These conclusions convince the Committee that Mr. Kalisch can learn from this single decision to violate the Court's Protective Order and move forward with his legal career with positive contributions. Similarly, these conclusions have led to the Committee's decision that a recommendation of disbarment is too severe of a sanction in light of Mr. Kalisch's circumstances.

Accordingly, the closely-divided Committee recommends that Mr. Kalisch be suspended from practicing in the Southern District of Florida for sixty (60) days. The Committee also recommends that Mr. Kalisch perform one hundred (100) hours of *pro bono* legal service with a

particular focus on domestic violence matters, to be completed in one year from the date the Court enters its Order on the Committee's Final Report and Recommendation. Mr. Kalisch should also be required to submit quarterly reports (starting on the 90th day after the Order entered by the Court) to the Committee concerning and detailing (on a date, time and services-rendered basis) his efforts to complete *pro bono* legal services required by the Court. He should be required to submit those reports until he has met the time-commitment requirements ordered by the Court. The Committee does not recommend any further requirements be imposed on Mr. Kalisch beyond those set forth above.

_____
William C. Hearon, Chair
*For the Committee*

## CERTIFICATE OF SERVICE

I CERTIFY that, on February 24, 2023, I served a true and correct copy of this Final Report and Recommendation on Scott T. Kalisch, Esq. via email at scottkalisch@bellsouth.net; and his counsel Brian Tannebaum, Esq. at btannebaum@tannebaum.com; and Henry Bell, Esq. at hbell@brresq.com.

_____
William C. Hearon, Esq.

16

Exhibit
B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**ADMINISTRATIVE ORDER 2023-31**
**CASE NO. 22-MC-23973**

IN RE:  **SCOTT TULLY KALISCH**
**FLORIDA BAR # 367877**

_____/

| FILED BY _____ **CW** _____ D.C. |
| :-- |
| **May 10, 2023** |
| ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - MIA |

### ORDER ON FINAL REPORT AND RECOMMENDATION

On July 6, 2022, Chief United States District Judge Cecilia M. Altonaga referred by letter attorney Scott Tully Kalisch to the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance for investigation concerning the attorney's actions and omission as counsel in *United States v. Reynaldo Crespo Marquez*, Case No. 21-20050-Cr (S.D. Fla.) [ECF No. 1]. Following that referral, on November 29, 2022, the Committee issued a Proposed Report and Recommendation [ECF No. 3] giving Mr. Kalisch 14 days to respond in accordance with Rule 6(c)(2)(B)(ii) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys. After no response was filed, the Court issued an Order to Show Cause [ECF No. 6] and Mr. Kalisch filed a Response [ECF No. 7] disagreeing with the Committee's recommended disbarment.

After a hearing before the Committee [ECF No. 10], the Committee submitted a Final Report and Recommendation [ECF No. 11] to the Court on February 24, 2023. An Order to Show Cause [ECF No. 12] was issued on February 27, 2023, giving Mr. Kalisch an opportunity to respond to the Final Report and Recommendation. Mr. Kalisch filed a Response [ECF No. 13], stating that "there is no good cause to show why the Committee's Final Report and Recommendation should not be adopted."

In accordance with Rule 6(c)(2)(B)(v) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, Local Rules of the United States District Court for the Southern District of Florida, the Undersigned submitted this matter to the Court for its consideration at a regularly scheduled Judges' Meeting held on May 4, 2023.   Upon review of the Final Report and Recommendation, response, and attachments, by unanimous vote of all District Judges and Senior Judges eligible to vote in attendance at the meeting, the Court approved and adopted the Committee's Final Report and Recommendation in full.

Given this background, in accordance with Rule 6(c)(2)(B)(v) and the Court's inherent power to regulate membership in its bar for the protection of the public interest, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."),

**IT IS ORDERED** that the Committee's Final Report and Recommendation is **ADOPTED**, and the matter is **CLOSED**.

**IT IS FURTHER ORDERED**, consistent with the Final Report and Recommendation, as follows:

1. Mr. Kalisch is suspended from practice in the United States District Court for the Southern District of Florida for 60 days.

2. Within one year of the date of this Order, Mr. Kalisch must perform 100 hours of *pro bono* legal service with a particular focus on domestic violence matters.

3. Mr. Kalisch must submit quarterly reports (starting on the 90th day after the date of this Order) to the Committee concerning and detailing (on a date, time, and services-rendered basis) his efforts to complete *pro bono* legal services required by the Court.   These reports

2

must be submitted until Mr. Kalisch has met the time-commitment requirements specified

in paragraph 2 above.

**DONE AND ORDERED** in Miami, Florida, this 10th day of May, 2023.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

c:      All South Florida Eleventh Circuit Court of Appeals Judges
        All Southern District of Florida District Judges
        All Southern District of Florida Bankruptcy Judges
        All Southern District of Florida Magistrate Judges
        United States Attorney
        Circuit Executive
        Federal Public Defender
        Clerks of Court – District, Bankruptcy and 11th Circuit
        Florida Bar and National Lawyer Regulatory Data Bank
        Library
        William C. Hearon, Chair, Ad Hoc Committee on Attorney Admissions, Peer Review,
              and Attorney Grievance
        Scott Tully Kalisch
        Brian L. Tannebaum, Counsel for Scott Tully Kalisch
        Henry P. Bell, Counsel for Scott Tully Kalisch

3

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

United States of America
_____
Plaintiff(s)

vs.

Jorge Solares Ruano
_____
Defendant(s)

)
)
)
)
)
)

Case Number:   23-441 (RC) (Under Seal)

**DECLARATION FOR PRO HAC VICE ADMISSION**
(to be attached to Motion for Pro Hac Vice Admission)

In accordance with LCvR 83.2 (c)(2) and LCvR 44.1 (c)(2), I hereby declare that the answers to the following questions are complete, true, and correct:

1. Full Name:  Scott Tully Kalisch

2. State bar membership number: Florida Bar #367877

3. Business address, telephone and fax numbers:

   435 South Oregon Avenue, Suite 104, Tampa, Florida 33606 Tel 305 669-0808

4. List all state and federal courts or bar associations in which you are a member "in good standing" to practice law:

   Southern and Middle District of Florida

5. Have you been denied admission, disbarred, suspended from practice, reprimanded, denied "in good standing" status, or otherwise disciplined by any court, bar association, grievance committee or administrative body?  Yes ☑      No ☐

6. Have any proceedings which could lead to any such disciplinary action been instituted against you in any such bodies?    Yes ☑     No ☐

   (Please attach a statement explaining any "Yes" answers to questions 5 or 6.)

7. List the number of times the attorney has been admitted pro hac vice into this court within the last two years.  None

   (If your principal office is located in the District of Columbia, please answer questions 8 and 9.)

8. Are you a member of the DC Bar?

9. Do you have a pending application for admission into USDC for the District of Columbia?

In compliance with Local Rule 83.2(b) or LCrR 44.1(b), an attorney who wishes to appear as sole or lead counsel in a contested evidentiary hearing or trial on the merits further certifies that he/she:

### (CHECK ALL ITEMS THAT APPLY)

1. ☑ has previously acted as sole or lead counsel in a federal district court or the Superior Court of the District of Columbia or a state trial court of general jurisdiction in a contested jury or bench trial or other contested evidentiary hearing in which testimony was taken in open court and an order or other appealable judgment was entered.  [LCvR 83.2(b)(1)/LCrR 44.1(b)(1)]; **OR**

2. ☐ has participated in a junior capacity in an entire contested jury or bench trial in a federal district court or the Superior Court of the District of Columbia or a state trial court of general jurisdiction. [LCvR 83.2(b)(2)/LCrR 44.1(b)(2)]; **OR**

3. ☐ has satisfactorily completed a continuing legal education trial advocacy course of at least 30 hours sponsored by the District of Columbia Bar or accredited by a State Bar. [LCvR 83.2(b)(3)/LCrR 44.1(b)(3)]

I declare under penalty of perjury that the foregoing is true and correct.

_____
4/18/24
DATE

_____
SIGNATURE OF ATTORNEY

2



# The Florida Bar

**651 East Jefferson Street**
**Tallahassee, FL 32399-2300**

Joshua E. Doyle
Executive Director

850/561-5600
www.FLORIDABAR.org

State of Florida    )

County of Leon    )

In Re:  0367877
        Scott Tully Kalisch
        Law Offices of Scott Kalisch
        435 S Oregon Ave Apt 104
        Tampa, FL 33606-2117

I CERTIFY THE FOLLOWING:

I am the custodian of membership records of The Florida Bar.

Membership records of The Florida Bar indicate that The Florida Bar member listed above was admitted to practice law in the state of Florida on **July 1, 1983**.

The Florida Bar member above is an active member in good standing of The Florida Bar who is eligible to practice law in the state of Florida.

Dated this _18th_ day of **April, 2024**.

Cynthia B. Jackson, CFO
Administration Division
The Florida Bar

PG:R10
CTM-279731